IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Teresa Busha, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:17-571-MGL-KDW |
| | ) | |
| v. | ) | Report and Recommendation |
| | ) | |
| South Carolina Department of Mental Health, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Teresa Busha ("Busha" or "Plaintiff"), filed this action against her employer, South Carolina Department of Mental Health ("Defendant" or "SCDMH"), initially asserting claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.* as applied through 28 C.F.R. Part 35 Section 504 ("Rehabilitation Act") and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* Upon removing Plaintiff's initial Complaint to this court, Defendant filed a Motion to Dismiss the Complaint. ECF Nos. 1, 4. On March 17, 2017, Plaintiff filed an Amended Complaint. ECF No. 6. As it was filed within the amendment-of-right period, the Amended Complaint is the operative pleading in this matter. *See* Fed. R. Civ. P. 15(a)(1)(B). Accordingly, Defendant's original Motion to Dismiss was dismissed as moot.[1] Plaintiff's Amended Complaint also includes state-law-based claims for violation of the South Carolina Wage Payment Act; breach of contract/covenant of good faith and fair dealing; and promissory estoppel. Am. Compl., ECF No. 6.

---

[1] In dismissing the original Motion to Dismiss as moot, the court noted such dismissal had been "[a]t the request of defense counsel." ECF No. 9. To be clear, the communication with defense counsel was purely clerical in nature and involved dismissal of Defendant's own motion. The mooting of a responsive motion is typical when an amended pleading is filed

Although Plaintiff also filed a response to the original Motion to Dismiss, it, too, is moot. In response to the Amended Complaint, Defendant filed an Answer, ECF No. 11, as well as a Motion for Judgment on the Pleadings, ECF No. 14. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation ("Report") on Defendant's Motion for Judgment on the Pleadings, in which it seeks dismissal of all of Plaintiff's causes of action. Plaintiff filed a responsive memorandum, ECF No. 20, to which Defendant filed a Reply, ECF No. 22. Having reviewed the parties' submissions and the applicable law, the undersigned recommends that Defendant's Motion for Judgment on the Pleadings, ECF No. 14, be granted as to all but Plaintiff's Rehabilitation Act retaliation claims occurring on or after January 26, 2016.

I.      Background

SCDMH is a state agency that operates outpatient facilities for mentally ill patients, including the Piedmont Center for Mental Health ("Piedmont") located in Greenville County, South Carolina. Am. Compl. ¶ 2. Plaintiff is currently employed as a Human Services Specialist I at Piedmont, a position she has held for approximately five years. *Id.* ¶ 4. Plaintiff's Amended Complaint concerns her treatment by SCDMH after her January 2015 degenerative-disc-disease diagnosis. *See generally id.* ¶ 5. In its Rule 12(c) Motion for Judgment on the Pleadings, SCDMH seeks dismissal on several legal grounds, including affirmative defenses. Details of Plaintiff's pleaded claims are set out within.

II.     Standard of Review

The standard of review for a motion seeking judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) motion is the same as that for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Butler v. United States,* 702 F.3d 749, 751–52 (4th Cir. 2012).

*See Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011) (noting court may take notice of matters of public record and those attached to complaint and Rule 12 motions, so long as authentic and integral to the complaint).

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). "A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When considering this motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted).

III.     Analysis

The following potentially relevant facts are taken from the pleadings and construed in the light most favorable to Plaintiff:[2]

| | |
|---|---|
| January 2015 | Plaintiff applied for FMLA leave due to a degenerative disc disease. Am. Compl. ¶¶ 4–5. |
| May 25, 2015 | Plaintiff was injured while working at SCDMH. *Id.* ¶ 7. |
| June 1, 2015 | SCDMH issued multiple write-ups to Plaintiff on and around this date. *Id.* ¶ 8. |

---

[2] Because Defendant first challenges the timeliness of Plaintiff's Rehabilitation Act claims the undersigned sets out potentially relevant facts in a "time-line" format.

| | |
|---|---|
| June 2, 2015 | Plaintiff's supervisor asked her to "flip" a resident's mattress. *Id.* ¶ 10. |
| June 3, 2015 | Plaintiff saw her doctor who stated Plaintiff's work restrictions included no bending and lifting. *Id.* ¶ 11. |
| June 5, 2015 | Plaintiff's supervisor again directed her to "flip" a mattress. *Id.* ¶ 12. |
| June 6, 2015 | Plaintiff's doctor completed an FMLA form for Plaintiff stating she would need follow-up treatments or to work part-time or on a reduced schedule. *Id.* ¶ 14. |
| June 8–9, 2015 | Plaintiff was absent from work. *Id.* ¶ 13. |
| June 10, 2015 | Plaintiff was told she could not return to work and "was placed out on continuous FMLA leave." *Id.* ¶ 15. |
| June–July 2015 | SCDMH requested a HIPAA[3] release to obtain information from Plaintiff's physician. *Id.* ¶ 16. |
| June–July 2015 | SCDMH's Human Resources ("HR") Manager contacted Plaintiff's physician. *Id.*. |
| August 14, 2015 | SCDMH sent a letter to Plaintiff directing her to return to work by August 25, 2015, because she had exhausted her FMLA leave. *Id.*[4] |
| September 8, 2015 | SCDMH requested clarification of Plaintiff's "permanent restrictions" noted in her FMLA form. *Id.* ¶ 17. |
| September 28, 2015 | Defendant's HR Manager sent a letter to Plaintiff "informing her that she was entitled to [180] days of leave, *including Family Medical Leave* as an employee of Defendant, citing its policy 902-11)." Am. Compl. ¶ 18 (emphasis in Am. Compl.)(attaching letter as ex. A, *see* ECF No. 6-1). |
| October 20, 2015 | Plaintiff again went out on medical leave (Plaintiff had no FMLA leave remaining). *Id.* ¶ 19. |
| December 28, 2015 | Plaintiff had surgery. *Id.* ¶ 20. |
| Jan. 11, 2016 | SCDMH advised Plaintiff that she had been on disability leave since June 8, 2015, and that she could "**request that the SCDMH State Director** |

---

[3] Health Insurance Portability and Accountability Act of 1977.
[4] It does not appear that Plaintiff returned at that time. *See, e.g.,* Jan. 11, 2016 letter, ECF No. 11-1 at 5 (indicating Plaintiff had been absent from work since June 8, 2015).

| | |
|---|---|
| | **grant an extension beyond 180-days of extended leave due to illness.**" Ex. 1 to Answer 5 (emphasis in original). |
| January 20, 2016 | Plaintiff requested "additional leave '*beyond the 180 days of extended leave due to illness.*'" *Id.* at 7 (quoting Jan. 11, 2016 letter) (emphasis in original). |
| **January 26, 2016** | **One year before Plaintiff filed this suit.** |
| February 10, 2016 | SCDMH approved Plaintiff's request to "remain on leave beyond 180 days through March 28, 2016." Ex. 1 to Answer 8. |
| March 18, 2016 | SCDMH again advised Plaintiff that she had been on disability leave since June 8, 2015, and that she could "**request that the SCDMH State Director grant an extension beyond 180-days of extended leave due to illness.**" *Id.* at 9 (emphasis in original). |
| March 22, 2016 | Plaintiff requested "additional leave '*beyond the 180 days of extended leave due to illness.*'" *Id.* at 10 (quoting Mar. 18, 2016 letter) (emphasis in original). |
| March 30, 2016 | SCDMH approved Plaintiff's request to "remain on leave beyond 180 days through May 9, 2016." *Id.* at 12. |
| April 11, 2016 | Plaintiff's doctor had released her to return to work as of May 9, 2016. Am. Compl. ¶ 20. Plaintiff received an email from SCDMH stating she could return to work on May 11, 2016 rather than May 9, 2016. *Id.* ¶ 21. |
| May 12, 2016 | SCDMH requested that Plaintiff provide a fitness-for-duty letter to confirm she was physically able to do her job. Am. Compl. ¶¶ 4, 22–24. SCDMH placed Plaintiff on leave without pay until she submitted a fitness for duty form. *Id.* ¶ 23. |
| May 26, 2016 | Plaintiff's physician sent an evaluation indicating she could do the essential functions of her job without accommodation. Pl. Mem. 20; *see* Am. Compl. ¶ 24. (The Amended Complaint does not include an exact date her physician's evaluative report or when it was received by Defendant.) |
| June 28, 2016 | At SCDMH's request, Plaintiff obtained a Functional Capacity Evaluation ("FCE") that cost $500.00 at her own expense. Am. Compl. ¶¶ 24, 45. Again, Plaintiff's physician found she was "able to do the essential functions of her job[.]" *Id.* ¶ 24. (The pleadings do not include the exact date of this report or the exact date Plaintiff returned to work after the report was obtained.) |

| September 28, 2016 | The South Carolina Human Affairs Commission ("SCHAC") issued a no-cause finding, dismissal, and notice of right to sue. *See* Def. Mem. 5; Am. Compl. ¶ 34.[5] |
|---|---|
| January 26, 2017 | Plaintiff filed her state-court Complaint in this matter. |

*See* Am. Compl., Answer, Def. Mem. 4–5, Pl. Mem. 20, Reply 3–5.

### A. Rehabilitation Act claims

The Rehabilitation Act prohibits recipients of federal funding, such as SCDMH, from discriminating against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). The Rehabilitation Act also incorporates the Americans with Disabilities Act ("ADA")'s anti-retaliation provision, 29 U.S.C. § 794(d), which prohibits "discrimination against any individual because [she] has opposed any act or practice made unlawful by" the ADA, 42 U.S.C. § 12203(a). *See* 29 U.S.C. § 794(d) ("The standards used to determine whether this section [of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the [ADA] and the provisions of sections 501 through 504, and 510, of the [ADA] as such sections relate to employment."); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of the two statutes is substantially the same, we apply the same analysis to both."). Even so, the causation standard applicable to discrimination claims brought under the Rehabilitation Act—"solely by reason of his or her disability," 29 U.S.C. § 794(a)—is more stringent than the ADA's "because of" disability-discrimination standard. *Reyazuddin v. Montgomery Cnty. Md.*, 789 F.3d 407, 413–14, 418 (4th Cir. 2015).

---

[5] The SCHAC letter is not a part of the pleadings; the date of the letter is derived from Defendant's memorandum. In any event, neither party has raised any issues concerning the SCHAC letter or its timing.

Here, Plaintiff claims Defendant violated the Rehabilitation Act by failing to accommodate her disability and by retaliating against her for taking disability leave.

    1.    Statute-of-limitations defense as to claims before January 26, 2016

Defendant seeks dismissal of Plaintiff's Rehabilitation Act cause of action, arguing it is time-barred. Def.'s Mem. 3–8. The Rehabilitation Act does not include an express statute of limitations. Accordingly, to determine the appropriate limitations period, the court looks to "the most appropriate or analogous statute of limitations derived from the state law most applicable to this federal statute[.]" *Childers v. Cnty. of York, SC,* No. 0:06–897–CMC, 2008 WL 552879, at *10 (D.S.C. Feb. 26, 2008) (citing 42 U.S.C. § 1988(a); *Wilson v. Garcia,* 471 U.S. 261, 268 (1985)). *See also Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 223 (4th Cir. 1993) (finding Virginia's Human Affairs Law was most analogous to the Rehabilitation Act and applying Virginia's one-year limitations period). Here, both parties appropriately apply the one-year statute of limitations[6] found in South Carolina's Human Affairs Law ("SCHAL") to Plaintiff's Rehabilitation Act cause of action.

Plaintiff filed her initial Complaint in state court on January 26, 2017. ECF No. 1-1. Accordingly, Defendant argues Plaintiff's Rehabilitation Act claims are time-barred because the claims concern matters that took place prior to January 26, 2016. Defendant also argues the continuing-violation doctrine is inapplicable to Plaintiff's failure-to-accommodate Rehabilitation Act claims. Def. Mem. 4–5. In response, Plaintiff does not dispute that the continuing-violation doctrine is inapplicable to her failure-to-accommodate claims. Plaintiff argues the doctrine applies to her Rehabilitation Act *retaliation* claims and points out that Defendant's principal brief did not focus on whether the continuing-violation doctrine applied to the retaliation claims.

---

[6] SCHAL provides that a claimant may file a lawsuit within one year from the date of the violation alleged. *See* S.C. Code Ann. §§ 1-13-90(d)(7) and (8), (e), and (f).

Further, Plaintiff argues that some of her Rehabilitation-Act claims took place after January 25, 2016 and are not time-barred. Pl. Mem. 6–10.

On Reply, Defendant argues that the continuing-violation doctrine is inapplicable to retaliation claims as well and that, in any event, Plaintiff has not pleaded sufficient facts to present any plausible Rehabilitation Act claims that took place on or after January 26, 2016. Reply 3–6.

### 2. The continuing-violation doctrine

While state law determines the applicable statute of limitations for Rehabilitation Act claims, federal law determines when those claims accrue. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (considering the ADA). A claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (internal quotation and citation omitted). A claim may be brought outside of the limitations period if the plaintiff can establish that it is a continuing violation of the ADA or the Rehabilitation Act. As the Fourth Circuit has explained, "in general, to establish a continuing violation, the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." *Id.* (internal brackets, citation, quotation marks omitted); *see also Hill v. Hampstead Lester Morton Court Partners LP*, 581 F. App'x 178, 180 (4th Cir. 2014) (considering continuing-violation doctrine in Rehabilitation Act case and noting the doctrine did not apply to discrete acts).

In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Supreme Court considered when Title VII claims would be considered to be timely filed, and distinguished between "discrete" discriminatory or retaliatory acts such as "termination, failure to promote, denial of transfer, or refusal to hire[,]" *id.* at 114, and hostile work environment claims, whose "very nature involves repeated conduct," *id.* at 115. The discrete acts of

discrimination and retaliation are considered to have "occurred" the day they "happened." *Id.* at 110, 114. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice" and "starts a new clock for filing charges alleging that act." *Id.* at 113, 114 (internal quotation omitted). A discrete discriminatory act is not actionable if time-barred, even if it relates to acts that are timely. *Id.* at 113. However, "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115. Instead, "a hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (internal quotation omitted). Therefore, while discrete discriminatory or retaliatory acts are time-barred if not filed within the statutory time period, a hostile work environment claim is timely "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.

In *Hill*, the Fourth Circuit found the continuing-violation doctrine is inapplicable in the failure-to-accommodate context because each request for accommodation is a discrete act—one that will not link back to make otherwise-untimely separate requests for accommodation timely. 581 F. App'x at 180 (citing *Morgan* and *A Soc'y Without a Name*). Discrete acts regarding retaliatory adverse employment decisions include "acts such as termination, failure to promote, denial of transfer, or refusal to hire," and each such incident "constitutes a separate actionable unlawful employment practice." *Morgan*, 536 U.S. at 114 (internal citations omitted). Here, Plaintiff has not alleged a hostile work environment/harassment claim. Rather, her Rehabilitation Act claims are for failure to accommodate and retaliation, neither of which lends itself to the continuing-violation doctrine. *See id.*

Accordingly, the continuing-violation doctrine is not available to make timely her claims of retaliation based on acts prior to January 26, 2016. For example, Plaintiff indicates she was "retaliated against by being written up and/or forced to perform non-essential functions of her job outside of her physical capacity[.]" Pl. Mem. 8. The allegations concerning having been written up and instructed to clean a room and flip a mattress were discrete acts that took place in and around June 2015. *See* Am. Compl. ¶¶ 8, 10, 12. Further, although Plaintiff apparently concedes the continuing-violation doctrine cannot salvage her failure-to-accommodate claims, the undersigned notes that any such claims that took place prior to January 26, 2016 are untimely and should be dismissed.

In recommending it be found that the continuing-violation doctrine does not apply to any of Plaintiff's pre-January 26, 2016 Rehabilitation Act claims, the undersigned has also considered the only case cited by Plaintiff in support of her continuing-violations argument: *Levin v. South Carolina Department of Health and Human Services*, 3:12-cv-0007-JFA, 2015 WL 1186370 (D.S.C. Mar. 16, 2015), appeal dismissed and remanded by *Stogsdill v. S.C. Dep't of Health and Human Servs.*, 674 F. App'x 291 (4th Cir. 2017). In *Levin*, the court did not focus on *whether* the continuing-violation doctrine would be applicable to failure-to-accommodate or retaliation claims brought under the Rehabilitation Act. Rather, the court focused on the doctrine's general requirement of a "continuing violation manifested in a number of incidents," as opposed to a continuing effect on the claimant. *Id.* at 7. Plaintiff offers no analysis of how the discussion in *Levin* vitiates the holdings in *Morgan*, *Hill*, and other similar authorities that find the continuing-violation-doctrine's analysis is inapplicable to claims for failure to accommodate or retaliation.

The continuing-violation doctrine cannot salvage Plaintiff's pre-January 26, 2016 Rehabilitation Act claims; such claims should be dismissed. The court must also consider whether Plaintiff has pleaded plausible Rehabilitation Act claims as to the timeframe from January 26, 2016 forward.

### 3. Rehabilitation Act claims on or after January 26, 2016

#### a. Failure-to-accommodate claims

The court must now consider whether Plaintiff has pleaded any plausible failure-to-accommodate or retaliation Rehabilitation Act claims that took place on or after January 26, 2016. To establish a failure-to-accommodate claim under the Rehabilitation Act, Plaintiff must demonstrate that (1) she has a disability; (2) her employer knew of the disability; (3) with reasonable accommodations she is otherwise qualified to perform the essential functions of the employment position in question; and (4) her employer refused to make such reasonable accommodations. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (listing elements of a failure to accommodate claim brought pursuant to the ADA); *cf. Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) (explaining same analysis is applied to ADA and Rehabilitation Act discrimination claims). Although the prima facie case "is an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002), to survive a pleadings-based challenge, a plaintiff must plead sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). In other words, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A reasonable accommodation is one that is feasible or plausible." *Reyazuddin*, 789 F.3d at 414

(citation omitted). "An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested. Rather, the employer may provide an alternative reasonable accommodation." *Id.* at 415 (citation omitted).

Here, Defendant argues that the Amended Complaint does not include any actionable discrete events that took place after January 25, 2016, making dismissal appropriate. Def. Mem. 7. Rather, Defendant indicates that, since that time, it granted Plaintiff's request for extended leave, which was itself a reasonable accommodation. Further, Defendant approved Plaintiff's return to work at her position—one she still holds. *Id.* In other words, Defendant submits that it has accommodated Plaintiff as required by the Rehabilitation Act.

Plaintiff disagrees. Arguably, Plaintiff seems to seems to submit that Defendant's actions subsequent to her doctor's clearing her to return to work as of May 9, 2016 constituted timely, actionable failure-to-accommodate claims. Plaintiff argues as follows:

> Specifically, on or about April 11, 2016, Plaintiff received an email from Defendant stating that she could not return to work on May 9, 2016, and that her return to work date would be May 11, 2016. On or about May 12, 2016, Defendant informed Plaintiff that she would be required to take a medical examination in order to determine if she was "fit to work." Plaintiff was again *involuntarily* placed on leave without pay (because she had been forced to exhaust her FMLA leave prematurely). Defendant required that she have return a Fitness for Duty letter. King instructed Plaintiff that she would "remain in a leave without pay status until further medical clearance has been received." On or about May 26, 2016, Plaintiff's physician sent an evaluation, which included a detailed review of Plaintiff's complete job description, to Defendant stating that Plaintiff could do all of the *essential* functions of her job WITHOUT accommodation. However, Defendant did not allow Plaintiff to work. On or about June 13, 2016, Defendant sent Plaintiff a letter stating that she would be required to complete a Functional Capacity Evaluation no later than June 30, 2016. Plaintiff completed the examination on or about June 28, 2016. Defendant did not allow Plaintiff to return to work. AGAIN, the physician (different from the first) found that Plaintiff was fit for duty for the essential functions of her job WITHOUT accommodation. As a result of Defendant's actions, Plaintiff lost more than two (2) months of pay. (*Am. Compl.* ¶¶ 37–45). For Defendant to state that "[t]he Amended Complaint does not present facts showing SCDMH failed to accommodate Plaintiff's disability after January 26, 2016," is wholly inaccurate and blatantly false.

Pl. Mem. 7–8. Without legal argument explaining *how* these events of 2016 constitute valid Rehabilitation Act claims of any kind, Plaintiff concludes that she has pleaded sufficient facts showing that "Defendant has discriminated against Plaintiff in at least one of the following particulars: job assignments, leaves of absence, and any other terms, conditions, or privileges of employment." Pl. Mem. 8.

Plaintiff offers no analysis of how these events amount to plausible Rehabilitation Act violations. The Rules require more. Although a court must accept all facts alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite pleading standard. *Twombly,* 550 U.S. at 555, 557. It is not the court's place to make arguments for the parties. *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Should the court so choose, Defendant's Motion could be granted as to 2016 failure-to-accommodate Rehabilitation Act claims based on Plaintiff's failure to explain her argument as to how the 2016 allegations constitute an actionable Rehabilitation Act claim.

In any event, the undersigned recommends finding Plaintiff has not pleaded a plausible, actionable failure-to-accommodate claim. Defendant has provided case law supporting its argument that the 2016 actions—requiring Plaintiff provide a fitness-for-duty letter and granting extended leave, albeit unpaid—are not actionable Rehabilitation Act failure-to-accommodate

claims. *See* Def. Mem. 7 (citing cases for proposition that employer permitted to seek medical inquiries in determining whether employee can perform essential functions of job and that extended leave may be a reasonable accommodation). *See, e.g., Porter v. U.S. Alumoweld Co., Inc.*, 125 F.3d 243, 246 (4th Cir. 1997) (noting that "an employer's request for a fitness for duty exam after an on-the-job injury is clearly job-related and a business necessity" and not violative of the ADA (quoting 42 U.S.C. § 12112(d)(4)); *see also Coursey v. Univ. of Md. E. Shore*, 577 F. App'x 167, 172–73 (4th Cir. 2014) (finding "the relevant EEOC regulations authorize an employer 'to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is still able to perform the essential functions of his or her job'") (quoting 29 C.F.R. pt. 1630, App. § 1630.14(c)).

Plaintiff never addresses the cases cited by Defendant; rather, she generally argues she was "discriminated against," based on the requirement of the FCE, fitness-for-duty letter, and the extended leave. Pl. Mem. 8. For purposes of analysis the undersigned assumes Plaintiff claims Defendant failed to accommodate her by not permitted her to return to and remain at work as of May 9, 2016, based on her physician's opinion and by sending her back out on unpaid leave while she obtained an FCE/fitness-for-duty letter.

Having considered the parties' arguments and the case law provided by Defendant, the undersigned recommends a finding that Plaintiff has not set out any plausible failure-to-accommodate claims based on any events that took place on or after January 26, 2016. Although Plaintiff's preference may have been to return to light-duty work in May 2016, *see* Am. Compl. ¶ 32 (noting her doctor had cleared her for light duty work), she is not entitled to the accommodation of her choice. *Griffen v. Holder*, 972 F. Supp. 2d 827, 849 (D.S.C. 2013) (holding the "Rehabilitation Act does not require Defendant to provide Plaintiff with the

accommodation of her choice"). Rather than have Plaintiff continue a light-duty version of her job when she returned on May 11, 2016, Defendant determined Plaintiff needed to have the FCE and would be placed on unpaid leave, which, at times, is a reasonable accommodation.[7] *See generally Moore v. Md. Dep't of Public Safety and Corr. Serv.*, C.A. No. CCB–11–553, 2011 WL 4101139, *3 (D. Md. Sept. 12, 2011) (noting "a temporary leave of absence may, in some circumstances, be a reasonable accommodation"). Here, Defendant was within its rights in requiring that Plaintiff obtain an FCE and provide a fitness-for-duty letter. Plaintiff has not set out facts sufficient to establish a plausible claim that her being placed on temporary unpaid leave while that transpired was a failure to provide reasonable accommodation. Dismissal of all of Plaintiff's failure-to-accommodate claims under the Rehabilitation Act is appropriate.

b. Retaliation claims

As discussed above, Plaintiff's argument that the continuing violations doctrine applies to her Rehabilitation Act retaliation claims is without merit, making any retaliation claims that took place before January 26, 2016 untimely. The court now considers whether Plaintiff has set out facts of any discrete acts that took place on or after January 26, 2016, and plausibly would support a timely retaliation claim under the Rehabilitation Act.[8]

In its principal brief, Defendant does not identify any acts of alleged retaliation that took place after January 25, 2016. In fact, Defendant does not reference Plaintiff's Rehabilitation Act-

---

[7] To the extent Plaintiff claims a Rehabilitation Act violation because Defendant had her return to work two days after the date her doctor had approved and then determined Plaintiff needed to have the FCE, she has not explained how that would violate the statute. Again, the court will not make Plaintiff's arguments for her.

[8] Generally, to establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show: (1) that he has engaged in protected conduct; (2) that he suffered an adverse action subsequent to engaging in the protected conduct; and (3) that the adverse action was "causally connected to [her] protected activity." *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme to Rehabilitation Act retaliation claim).

based *retaliation* claims at all. Instead, Defendant's discussion of Rehabilitation Act claims focuses only on failure-to-accommodate claims and focuses on pre-January 26, 2016 facts. Def. Mem. 5–6.

In response, Plaintiff points to several events events that took place on or after January 26, 2016, arguing they provide timely Rehabilitation Act retaliation claims. Plaintiff indicates she was "retaliated against by being written up and/or forced to perform non-essential functions of her job outside of her physical capacity," was "denied the opportunity to perform light duty," and "after returning from leave, was retaliated against for taking said leave when Defendant placed her out of work for two additional months, costing her two months of wages." Pl. Mem. 8–9 (citing Am. Compl. ¶¶ 6–12, 14–15, 18, 20–24). Paragraphs 20–24 concern Plaintiff's having been released by her doctor to return to work on May 9, 2016, Defendant's advising her on April 11, 2016 that her return-to-work date would be May 11, 2016, and her being advised on May 12, 2016 that she was being placed on involuntary leave without pay while she obtained an FCE. Am. Compl. ¶¶ 20–24.

Notably however, Defendant's Reply does not address Plaintiff's allegations concerning the events set out in paragraphs 20–24 of the Amended Complaint. Rather, the Reply more generally argues that discrete allegations of retaliation that took place before January 26, 2016 are outside the limitations period and cannot be saved by the continuing violation doctrine. Reply 3–6. As to events that took place on or after January 26, 2016, Defendant's focus is on the failure-to-accommodate portion of Plaintiff's Rehabilitation Act claim. *Id.* Defendant does generally argue that Plaintiff has not set out a "valid Rehabilitation Act claim" because she has not pleaded facts to establish that she was excluded "solely by reason of" her disability. *See* Reply 6 (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999)). To the extent

that brief argument is intended to inform the court's analysis of the retaliation claim it is not sufficient to demonstrate entitlement to judgment at this juncture. *Rose* specifically noted the Rehabilitation Act's "solely by reason of" language applied to the "causative link between *discrimination* and adverse action." *Id.* at 469 (emphasis added). The *Rose* case did not discuss the causation standard applicable to a *retaliation* claim brought pursuant to the Rehabilitation Act, nor has Defendant cited any Fourth Circuit precedent considering the issue and finding the stringent "solely by reason of" causation standard applies when a plaintiff is setting out a Rehabilitation Act retaliation claim. In fact, in *S.B. ex rel. A.L.* the Fourth Circuit noted prima facie causation could be established by temporal proximity. Without discussion of the specific causation standard, the Fourth Circuit went on to find that plaintiff had not established the causation required to establish pretext. 819 F.3d at 78–79. *See also Lyons v. Shinseki*, 454 F. App'x 181, 185 (4th Cir. 2011) (finding the prima facie causation requirement of a retaliation claim under the Rehabilitation Act could be established through temporal proximity between the protected act and the adverse employment action); *cf. Palmquist v. Shinseki*, 689 F.3d 66, 76–77 (1st Cir. 2012) (finding "but-for causation" standard applicable to Rehabilitation Act retaliation claims).

Without briefing on the point by either party the undersigned offers no opinion as to the causation standard applicable to a pleadings-stage challenge of a Rehabilitation Act retaliation claim or to recommend dismissal at this juncture. Accordingly, based on this record and briefing, the court finds it inappropriate to dismiss the Rehabilitation Act retaliation claims based on matters taking place on or after January 26, 2016. *See generally Sanders v. United States*, No. CV 2:16-2356-RMG, 2017 WL 1102612, at *7 (D.S.C. Mar. 23, 2017) (denying motion to dismiss without prejudice when parties had not fully briefed a particular issue). Defendant's

Motion should be denied as to Rehabilitation Act retaliation claims based on events that took place on or after January 26, 2016 only.

B.    Breach of contract/covenant of good faith and fair dealing

Defendant seeks judgment on the pleadings as to Plaintiff's second cause of action—breach of contract/covenant of good faith and fair dealing. Defendant argues Plaintiff's Amended Complaint does not include allegations to support a breach of contract claim in that she has not established the existence of a contract or breach of any specific terms of any contract. Def. Mem. 8-11.

To move forward with a breach-of-contract claim, Plaintiff must present facts sufficient to plausibly demonstrate the existence of a contract between herself and Defendant, a breach of that contract, and causally related damages. *See Allegro, Inc. v. Scully*, 791 S.E.2d 140, 145 (S.C. 2016); *Staley v. Computer Scis. Corp.*, No. 3:13-CV-00280-MGL, 2014 WL 6473703, at *11 (D.S.C. Nov. 18, 2014) ("To prevail on a breach of contract claim under South Carolina law, a plaintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach.").

Plaintiff's Amended Complaint attaches as an exhibit a September 28, 2015 letter she received from Defendant that provides as follows:

> As an employee of the [SCDMH] and per leave policy number 902-11, you are entitled up to one hundred eighty (180) calendar days of disability leave. If you choose to request disability leave, please provide a written request with medical certification from your physician to include a description of the disability and inclusive dates. Please be advised that the one hundred eighty (180) days of disability leave does include weekends, holidays, and Family and Medical Leave Act (FMLA) leave previously taken this year. For further information regarding this policy, please refer to the enclosed leave directive, number 902-11. If you are interested in requesting disability leave, please submit a written request with your physician's medical certification to Mr. Joe James, Piedmont Center for Medical Services Executive Director no later than October 15, 2015.

ECF No. 6-1; *see* Am. Compl. ¶¶ 36–51. Plaintiff also references (but does not attach) an email from Defendant regarding her returning to work on May 11, 2016 and a June 13, 2016 letter in which Defendant advised her that she needed to complete the FCE examination by June 28, 2016. Am. Compl. ¶¶ 39, 44. Plaintiff alleges the "letters from Defendant were not vague promises. It was mandatory language in a specific, written form and constitutes an enforceable contract that has been breached." *Id.* ¶ 48.

In seeking judgment on the pleadings, Defendant cites numerous cases finding that South Carolina law presumes employment to be at-will, as opposed to being contractual in nature. *See* Def. Mem. 9 (*citing, e.g., Prescott v. Farmers Telephone Co-op., Inc.*, 516 S.E.2d 923, 927 (S.C. 1999)). To survive a Rule 12 motion here, Plaintiff "must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship." *Perrine v. G4S Solutions (USA), Inc.*, C.A. No. 2:11–1210–RMG, 2011 WL 3563110, at *1 (D.S.C. Aug. 9, 2011) (citation omitted). Further, Defendant argues the September 28, 2015 letter on which Plaintiff hinges her breach-of-contract claim merely advises Plaintiff of SCDMH's leave policy and does not create a specific, enforceable promise. For a general policy statement to be enforceable as a contract, the statement "must be definitive in nature, promising specific treatment in specific situations." *Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 21 (S.C. Ct. App. 2006); *Anthony v. Atl. Grp., Inc.*, 909 F. Supp. 2d 455, 467 (D.S.C. 2012) *aff'd* (July 12, 2013); *see also Smith v. City of Anderson*, 8:15-3395-TMC-KFM, 2017 WL 486934, *5 (D.S.C. 2017) (finding "general statements of obligations, or of the law, do not create an exception to at-will employment") (citing *Hessenthaler v. Tri–County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005)), *report and recommendation adopted,* No. CV 8:15-3395-TMC, 2017 WL 479525 (D.S.C. Feb. 6, 2017).

Defendant also argues that, even if the letter could be considered to have established some sort of contract, Plaintiff has not pleaded facts sufficient to demonstrate how the contract was breached. Def. Mem. 11. If the "contract" is to permit Plaintiff 180 days of leave, Defendant argues, that contract has been fulfilled because Defendant has granted Plaintiff's request for disability leave from June-to-September 2015 and October 2015-to-May 2016. *Id.*

Defendant also provides a copy of a "Disclaimer, Acknowledgement and Rec[e]ipt of SCDMH Directive or Policy" that Plaintiff signed on October 10, 2011. Ex. B to Answer, ECF No. 11-2. The Disclaimer provides that no employment contract is created by any "SCDMH Directive, Regulations, Rules, Policies, Handbooks, Manuals, Practices, Procedures or other Documents Relating to Employment" unless the terms are in writing, labeled as a "contract," states duration of employment, and is signed by the State Director of Mental Health. *Id.* Defendant does not discuss this Disclaimer in detail other than in the argument that Plaintiff is an at-will employee with no contract of employment with SCDMH. Def. Mem. 10 & n.2.

In Plaintiff's Response, she makes no argument concerning the substance of the alleged contract or breach, nor does she reference or discuss any of the applicable case law relied on by Defendant. Rather, the only reference to her breach of contract claim at all is a paragraph arguing the "release" she signed in 2011 could not possibly be binding on her to release future unforeseen claims she may have later. Pl. Mem. 11–12 (citing general South Carolina law for the proposition that a "general release" covers only "claims and demands" contemplated by the parties at the time of the release). Plaintiff apparently is couching the "Disclaimer" as a "release." Defendant does not argue that, through the Disclaimer, Plaintiff "released" her future claims.

Because Plaintiff has not addressed the essential issues raised by Defendant—whether a contract exists and whether any such contract was breached—dismissal is appropriate without further ado. *See Weaver v. John Lucas Tree Expert Co.*, 2:13–1698–PMD, 2013 WL 5587854, *5 (D.S.C. Oct. 10, 2013) (noting that it "is axiomatic that to recover under a theory of breach of contract, a valid contract must have existed between the parties."); *see generally Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009) (finding plaintiff's failure to address issue raised in dispositive motion to constitute "waiver or abandonment of the relevant cause of action").

In any event, the undersigned is of the opinion that Defendant is entitled to judgment on the pleadings as to the breach-of-contract cause of action. "To qualify as mandatory language sufficient to establish an implied contract for employment, the policy [] language 'must be definitive in nature, promising specific treatment in specific situations.'" *Anthony*, 909 F. Supp. 2d at 467 (quoting *Hessenthaler,* 616 S.E.2d at 698). Accepting all facts in the light most favorable to Plaintiff, the September 2015 letter does not create an enforceable contract. Instead, it sets out SCDMH's general leave policy—indicating employees are entitled to 180 days of disability leave. The letter does not include specific promises of being treated in a particular manner in a particular situation. Rather, the letter directs Plaintiff elsewhere to learn more or to request disability leave. Defendant's Motion for Judgment on the Pleadings should be granted as to Plaintiff's cause of action for "Breach of Contract/Covenant of Good Faith and Fair Dealing."[9]

---

[9] Because Plaintiff has not set out a plausible breach-of-contract claim, any purportedly separate claim for breach of the implied covenant of good faith and fair dealing also fails. *See Williams v. Riedman*, 529 S.E.2d 28, 40 (S.C. Ct. App. 2000) (declining to apply this covenant to the employment at-will situation when no contract exists); *Smith*, 2017 WL 486934, at *5 n.3.

C.     South Carolina Wage Payment Act ("SCWPA")

Plaintiff's Amended Complaint also includes a cause of action pursuant to SCWPA. She claims that the $500 she herself paid to have the FCE completed "effectively reduced" her wages. Am. Compl. ¶¶ 52–58. Defendant seeks dismissal, arguing that such an out-of-pocket payment does not implicate the SCWPA's protection of deduction of salary to fund benefits. Def. Mem. 12 (citing S.C. Code Ann. § 41-10-30(A); *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 782 (S.C. 2010)).

Plaintiff's responsive memorandum does not include any argument that the SCWPA should survive Defendant's Rule 12(c) challenge. Therefore, it appears Plaintiff has abandoned her SCWPA claim. *Eady*, 609 F. Supp. 2d at 560–61. Independently, the undersigned agrees with Defendant's argument. Plaintiff has not pleaded a plausible violation of SCWPA. Defendant's Motion should be granted as to the SCWPA cause of action.

D.     FMLA

Plaintiff's next cause of action is for violation of the FMLA. Am. Compl. ¶¶ 59-72. Because the leave Plaintiff took was for her own medical condition, she proceeds under the FMLA's so-called "self-care provision." *See* 29 U.S.C. § 2612(a)(1)(D) (providing that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."). Plaintiff seeks money damages, alleging claims of interference and retaliation.

Defendant seeks judgment on the pleadings, alleging Plaintiff cannot recover damages from a State for the violation of the FMLA's self-care provision, because, in enacting the FMLA's self-care provision, Congress did not abrogate States' sovereign immunity. Def. Mem.

13–14 (citing numerous cases in support of its position). In response, Plaintiff argues that, through Defendant's September 28, 2015, letter to her that referenced FMLA and Defendant's leave policy, Defendant waived any available sovereign immunity. Pl. Mem. 10–11.

The undersigned agrees with Defendant. Cases cited by Defendant make it clear that suits brought against states under the FMLA's self-care provision are "barred by the States' immunity as sovereigns in our federal system." *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 33 (2012); *see also Hale v. Mann*, 219 F.3d 61 (2nd Cir. 2000) (finding state was entitled to sovereign immunity in former state employee's FMLA suit alleging that he was terminated in retaliation for taking twelve-week leave to deal with his own serious health condition). SCDMH is a state agency of South Carolina and, as such, is an "integral part of the state" for purposes of Eleventh Amendment immunity.

Plaintiff's argument that Defendant has waived immunity as to her FMLA claim for money damages is unavailing. Plaintiff is correct that a State or state agency may be sued when it has "consented to be sued." Pl. Mem. 10 (citing *Stewart v. North Carolina*, 292 F.3d 484 (4th Cir. 2005)). However, as noted by Defendant, any such "consent" must be expressly given through an explicit statement indicating the State or state agency intends to waive immunity. Def. Mem. 13. *See Edelman v. Jordan,* 415 U.S. 651, 673 (1974) (noting the Court will find waiver of constitutional immunity only when it has been "stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." (internal quotations and alteration omitted). Nothing in the September 28, 2015

letter from Defendant to Plaintiff or in subsequent communications suggests SCDMH intended to waive its immunity from suit here.[10]

Plaintiff's claim that a question of fact exists as to whether Defendant's HR representative who signed the September 2015 letter had authority to "bind" Defendant is unavailing. Regardless of its author, the September 2015 letter contains no express language of consent. Defendant has not waived its sovereign immunity as to Plaintiff's FMLA claim. Defendant's Motion should be granted as to this cause of action.

E.    Promissory estoppel

Finally, Defendant seeks judgment on the pleadings as to Plaintiff's promissory estoppel claim. To state a claim for promissory estoppel, a plaintiff must prove that there was (1) an unambiguous promise; (2) reasonable reliance on the promise by the party to whom it was made; (3) the reliance is expected and foreseeable by the party who made the promise; and (4) injury in reliance on the promise. *Powers Const. Co. v. Salem Carpets, Inc.*, 322 S.E.2d 30, 33 (S.C. App. 1984).

> In her Amended Complaint Plaintiff avers the following:
>
> In the event that Defendant argues it was not subject to the [FMLA] or waived its immunity to be subject to such Act, Plaintiff asserts that Defendant made unambiguous representations to Plaintiff that she was protected by the [FMLA] through their (sic) overt representations by letter and by the policies adopted by Defendant[.].

---

[10] While Plaintiff has not raised this point, the undersigned notes that Defendant's removal of this matter from South Carolina's courts does not operate as waiver of immunity because South Carolina has not waived its sovereign immunity to be sued under the FMLA in her own courts. *See Mensack v. S.C. Dep't of Mental Health*, No. 3:16-CV-0723-CMC-KDW, 2016 WL 4374845, at *2 (D.S.C. Aug. 17, 2016) (noting any waiver of Eleventh Amendment immunity occasioned by removal does not also waive a state's sovereign immunity from being sued on the claim in her own courts); *cf. Williams v. Dorchester Cnty. Det. Ctr.*, 987 F. Supp. 2d 690, 697 (D.S.C. 2013) (declining plaintiff's requested remand to state court, noting that "the State of South Carolina has not waived its sovereign immunity from suit under the self-care provision of the FMLA, even in state court.").

Am. Compl. ¶ 74. Plaintiff submits she reasonably relied on Defendant's representations, that Defendant expected her to do so, and that she was damaged as a result of her reasonable reliance on such promises. *Id.* ¶¶ 75-77. Looking to the September 2015 letter, Plaintiff argues Defendant made the "unambiguous promise" that she "is entitled to 180 days of leave, including FMLA." Pl. Mem. 12. She submits that she relied on that promise to her detriment in that she was retaliated against, by "being forced to obtain [an FCE], and placed on unpaid leave for two months following her return to work." Pl. Mem. 12.

In seeking dismissal, Defendant asserts Plaintiff has not shown any "unambiguous promise" made by Defendant. Def. Mem. 6–7. The undersigned agrees. As discussed above in connection with the breach-of-contract claim, the September 28, 2015 letter explains to Plaintiff the SCDMH leave policy and how Plaintiff is to seek leave. The letter does not contain an "unambiguous promise." In any event, as argued by Defendant, to the extent there was any promise made it was that Plaintiff was entitled to 180 days of leave. It is undisputed that Plaintiff was on leave for well over that amount of time. A January 11, 2016 letter from Defendant to Plaintiff noted she had been on disability leave since June 8, 2015, and that the leave policy provided for 180 days of leave, which had ended on December 5, 2015. ECF No. 11-1. Plaintiff received what she was "promised"—180 days of leave. Although Plaintiff attempts to morph that promise into more by claiming she was damaged in the form of retaliation and placement on unpaid leave, these arguments presuppose a breached promise/contract—something she has not plausibly pleaded.[11] Plaintiff has not set out a plausible promissory-estoppel claim.

_____

[11] Furthermore, those claims may be addressed through her retaliation claim discussed above.

IV.     Conclusion and Recommendation

For the reasons set forth above, the undersigned recommends Defendant's Motion for Judgment on the Pleadings, ECF No. 14, be *granted in part and denied in part.* If this Report is adopted, only Plaintiff's Rehabilitation Act retaliation claim for matters occurring on or after January 26, 2016 will go forward. All other aspects of Plaintiff's Rehabilitation Act claims; her FMLA claims; and her state-law claims for breach of contract, promissory estoppel, and violation of the SCWPA will be dismissed if the Report is adopted.

IT IS SO RECOMMENDED.

August 31, 2017                                    Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**